UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Vera Porrini,<br><br>                    Plaintiff,<br><br>— against —<br><br>McRizz, LLC d/b/a Crest French Cleaners, Michael Rizzo, and Meghan McNulty Rizzo,<br><br>                    Defendants. | **2:19-cv-3979 (ARR) (RML)**<br><br><br>**Not for print or electronic publication**<br><br><br>**Opinion & Order** |

ROSS, United States District Judge:

The plaintiff, Vera Porrini, sued defendants McRizz, LLC d/b/a Crest French Cleaners ("Crest"), Michael Rizzo ("Rizzo"), and Meghan McNulty Rizzo ("McNulty"), alleging claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), as well as for breach of contract and unjust enrichment. Defendants Crest and McNulty filed counterclaims against Porrini, alleging breach of contract, conversion, and negligence. Porrini moves to dismiss or strike the counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). For the reasons set forth below, Porrini's motion is denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Porrini alleges that she worked as a seamstress at Crest from around February 1991 through around September 2018. First Am. Compl. ¶ 30, ECF No. 16. In May 2009, with Porrini already working there, Rizzo and McNulty purchased Crest and continued to employ her. *Id.* ¶ 31. Porrini had a work schedule, which dictated that she work from 10:00 a.m. to 6:00 p.m. on Mondays through Fridays and from 10:00 a.m. to 4:00 p.m. on Saturdays. *Id.* ¶ 34. However, Rizzo and McNulty often directed Porrini to work until after 9:00 p.m. *Id.* ¶ 35. Porrini worked approximately

forty-six to sixty-one hours per week. *Id.* ¶ 39.

Porrini, Rizzo, and McNulty agreed to abide by a particular compensation structure for Porrini's seamstress work. Before Rizzo and McNulty purchased Crest, Crest's prior owners entered into an agreement with Porrini "to pay her 60% of the amounts charged to customers for seamstress work, with Crest retaining the remaining 40%." *Id.* ¶ 41. Rizzo and McNulty "agreed to continue and comply with" this pre-existing arrangement when they purchased Crest. *Id.* ¶ 42. The defendants would generate a ticket that corresponded to each garment that Porrini sewed. *Id.* ¶ 43. Each ticket listed the service that Porrini provided and the total amount charged to the customer. *Id.* ¶ 44. On each Saturday afternoon, Porrini collected that week's tickets, calculated the total revenue generated, and submitted that calculation to the defendants. *Id.* ¶ 45. The parties' agreement dictated that the defendants would then cross-reference Porrini's calculations against their own and determine the amount owed to Porrini for that week. *Id.* ¶ 46. The defendants were then supposed to pay Porrini on the Wednesday following the completion of each bi-weekly pay period. *Id.* ¶ 47.

However, the defendants did not pay Porrini in accordance with their agreement. *Id.* ¶ 48. For most pay periods, they declined to pay her at all. *Id.* ¶ 49. Because the defendants did not pay Porrini at all, they failed to pay her the minimum wage, and they did not pay her overtime despite the fact that she worked more than forty hours per week. *Id.* ¶¶ 51–52. They also did not pay her on her regularly scheduled pay day and did not give her any wage statements. *Id.* ¶¶ 63, 67–68. When Porrini complained, the defendants promised to "make [her] whole at some point in the future, if she only continued working for [Crest]." *Id.* ¶¶ 53–54. Porrini thus continued to work at Crest until her deteriorating health caused her to leave. *Id.* ¶ 61. Ultimately, the defendants paid Porrini only approximately $50,000 over the course of almost ten years, and they still have not

paid her "the vast majority of her earned wages." *Id.* ¶¶ 55, 62. At various times, Rizzo has acknowledged owing Porrini as much as $240,000 or $380,000. *Id.* ¶¶ 72, 75.

Porrini filed a complaint against the defendants in July 2019. *See* Compl., ECF No. 1. Rizzo failed to appear, and the Clerk of Court entered his default in August 2019. *See* Clerk's Entry of Default, ECF No. 12. A motion for default judgment against Rizzo is currently pending. *See* Mot. for Default J., ECF No. 28. Crest and McNulty answered and asserted counterclaims against Porrini for breach of contract, conversion, and negligence. *See* Answer ¶¶ 176–212, ECF No. 13. Porrini asserts that Crest and McNulty brought these counterclaims as retaliation against her for filing this lawsuit. First Am. Compl. ¶¶ 79, 82–84. She amended her complaint to include this assertion in September 2019. *See id.* ¶¶ 79, 82–84, 173–87. Her amended complaint also includes claims under the FLSA and NYLL, as well as for breach of contract and unjust enrichment. *See id.* ¶¶ 85–172.

Crest and McNulty answered the amended complaint and again raised counterclaims for breach of contract, conversion, and negligence. *See* Answer to First Am. Compl. and Countercls. ¶¶ 199–235, ECF Nos. 20–21 ("Countercls.").[1] In their counterclaims, they first allege that they had an independent contractor agreement with Porrini. *Id.* ¶¶ 199–201. Pursuant to that agreement, Porrini would prepare tags for the work that she performed and attach them to the garments that she sewed; the defendants would then use the information on the tags to generate tickets and receipts, receive payment from customers, and pay sixty percent of the proceeds to Porrini. *Id.* ¶¶ 202–03.

Crest and McNulty allege that Porrini committed several wrongs: (1) "submitting duplicate

---

[1] Crest and McNulty appear to have each filed identical documents containing the same answer and counterclaims. *See* ECF Nos. 20–21. I will cite to ECF No. 20.

3

tickets and demanding payment for garments already completed and paid for"; (2) using her key to conduct business when the store was closed, during which time she accepted cash payments directly from customers and used the defendants' equipment and supplies; (3) cleaning garments for customers when the store was closed in exchange for cash payments, without reporting those payments to the defendants; and (4) improperly turning on a washing machine and then leaving the building, which resulted in water flooding the facility and causing damage. *Id.* ¶¶ 205–12. In whole or in part, these same alleged facts underlie all three of their counterclaims—for breach of contract, conversion, and negligence. *See id.* ¶¶ 205–225, 228–34. As part of their conversion claim, Crest and McNulty also allege that Porrini converted their cleaning and tailoring supplies by loading them into the trunk of her car. *See id.* ¶ 226. Crest and McNulty seek damages of a "sum to be determined at trial together with interest, costs, fees, and disbursements." *Id.* ¶¶ 213, 227, 235. Porrini moves to dismiss or strike all three counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). Mot. to Dismiss or Strike, ECF No. 33.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, I must accept all factual allegations in the counterclaims as true and draw all reasonable inferences in favor of the non-moving party. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)) (articulating standard for motion to dismiss a complaint); *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 10–11 (E.D.N.Y. 1998) (articulating the same for motion to dismiss counterclaims). The counterclaims' allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Only "a

4

plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)).

Under Rule 12(f), a party may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The standard that applies to a motion to strike is the 'mirror image' of the standard on a 12(b)(6) motion to dismiss for failure to state a claim." *Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo*, 346 F. Supp. 3d 432, 471 (S.D.N.Y. 2018) (quoting *Cohen v. Elephant Wireless, Inc.*, No. 03 Civ. 4058(CBM), 2004 WL 1872421, at *2 (S.D.N.Y. Aug. 19, 2004)). However, "[m]otions to strike are generally disfavored[.]" *Cohen*, 2004 WL 1872421, at *2; *see also SRSNE Site Grp. v. Advance Coatings Co.*, No. 3:12–CV–443 (VLB), 2014 WL 671317, at *2 (D. Conn. Feb. 21, 2014).

## DISCUSSION

Porrini first argues that I should dismiss the counterclaims as time barred. *See* Pl.'s Mem. of Law in Supp. of Mot. to Dismiss and/or Strike 5, ECF No. 33-1 ("Pl.'s Br."). Second, she argues that I should partially dismiss or strike the counterclaim for conversion because it duplicates the breach of contract claim and because the money that Porrini allegedly retained from customers is not the proper subject of a conversion action. *See id.* at 6–8. Third, she argues that I should dismiss or strike the defendants' requests for costs, fees, and disbursements because the defendants have alleged no ground on which they could recover attorneys' fees in connection with their counterclaims. *See id.* at 8–10. Finally, Porrini argues that if I grant any part of her motion, I should not provide the defendants with another opportunity to amend their pleading. *See id.* at 10–13. As

discussed below, I find none of Porrini's first three arguments persuasive and decline to dismiss or strike any portion of the counterclaims. Accordingly, I do not need to address Porrini's last argument regarding whether I should grant the defendants another opportunity to amend.

## I.    I will not dismiss the counterclaims as time barred because it is not apparent on their face that the statutes of limitations have run.

Under New York law, the statute of limitations for a breach of contract action is six years, *see CDx Labs., Inc. v. Zila, Inc.*, 80 N.Y.S.3d 382, 383 (N.Y. App. Div. 2018) (citing N.Y. C.P.L.R. § 213 (McKinney) ("CPLR")), and for conversion and negligence actions it is three years, *see Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso*, 660 N.E.2d 1121, 1126 (N.Y. 1995) (citing CPLR § 214(3)) (conversion); *Tenenbaum v. Gibbs*, 813 N.Y.S.2d 155, 156 (N.Y. App. Div. 2006) (citing CPLR § 214(4)) (negligence). That the statute of limitations for a cause of action has run is an affirmative defense. *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 118 (S.D.N.Y. 1993). As such, the party raising the issue "bears the initial burden of demonstrating, prima facie, that the time within which to commence the cause of action has expired[.]" *Garron v. Bristol House, Inc.*, 79 N.Y.S.3d 265, 267 (N.Y. App. Div. 2018) (quoting *Collins Brothers Moving Corp. v. Pierleoni*, 63 N.Y.S.3d 478, 480 (N.Y. App. Div. 2017)). "An affirmative defense may be raised by a . . . motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the [pleading that the moving party seeks to dismiss]." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). That is, "[w]here the dates in a [pleading] show that an action is barred by a statute of limitations, a [party] may raise the affirmative defense in a . . . motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see also Richey v. N.Y.C. Transit Auth.*, No. 07-CV-3711 (SLT)(LB), 2008 WL 4185877, at *1 (E.D.N.Y. Sept. 9, 2008) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)) ("A [party] may raise the affirmative defense of statute of limitations in a motion to

6

dismiss under Rule 12(b)(6) if the issue can be resolved by examining the face of the [pleading].").

Here, the face of the defendants' counterclaims does not show that those claims are time barred. In fact, the counterclaims do not provide any dates at all for Porrini's alleged conduct. Rather, with respect to timing, they allege that Porrini and the defendants' predecessor in interest entered into an agreement about eight years before the defendants purchased Crest and that when the defendants purchased Crest, they assumed all of the terms of that agreement. Countercls. ¶¶ 200–01. Porrini's alleged actions could have plausibly occurred at any point in time while she was working for the defendants—which Porrini herself alleges was until around September 2018, fewer than three years before the defendants filed their counterclaims. *See* First Am. Compl. ¶ 13. Thus, dismissal of the counterclaims on a 12(b)(6) motion is not proper.

Porrini argues that because the defendants did not plead specific timeframes during which Porrini's alleged conduct occurred, I should dismiss the counterclaims. *See* Pl.'s Br. 5–6. However, as the party moving for dismissal, Porrini bears the initial burden of demonstrating, *prima facie*, that the counterclaims are time barred. *See Garron*, 79 N.Y.S.3d at 267. She has not met that burden here.

Further, none of the authorities that Porrini cites militate in favor of dismissal. *See* Pl.'s Br. 5–6. In *Cicel (Beijing) Sci. & Tech. Co., Ltd. v. Misonix, Inc.*, a court in this district dismissed a tortious interference with a contract claim when the plaintiff did not "include[] any details regarding specific contracts[.]" No. 2:17-cv-1642 (ADS)(SIL), 2017 WL 4535933, at *7–8 (E.D.N.Y. Oct. 7, 2017). Rather, the plaintiff "merely allege[d] the existence of such agreements, but fail[ed] to provide any particulars regarding the number of agreements, the parties to the contracts and any relevant provisions or dates[,]" thereby "fail[ing] to provide the who, what, where, when details that are required." *Id.* at *7. First, unlike in *Cicel*, the defendants here alleged

that a particular agreement existed between them and Porrini—the independent contractor agreement that the defendants inherited from their predecessor in interest—and provided some specific terms of that agreement. *See* Countercls. ¶¶ 199–204. Thus, the counterclaims do not suffer from the same deficiencies as the claims in *Cicel*, where the plaintiff did not even allege a particular number of agreements, who the parties were, or what provisions were relevant. Second, *Cicel* did not involve a statute of limitations issue. Porrini also cites to two authorities that analyzed copyright infringement claims—which require a claimant to allege as an element "the timeframe during which the defendant committed the acts." *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890(TPG), 2014 WL 1303135, at *3 (S.D.N.Y. Mar. 31, 2014) (citing *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd sub nom. Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994)); *Mahnke v. Munchkin Prods., Inc.*, No. 99Civ.4684(LTS)(THK), 2001 WL 637378, at *5 (S.D.N.Y. June 7, 2001). The counterclaims that the defendants bring here have no such element. *See Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)) (negligence); *Cicel*, 2017 WL 4535933, at *4 (quoting *Brooklyn 13th St. Holding Corp. v. Nextel of N.Y., Inc.*, No. 11–CV–1048 (CBA)(RLM), 2011 WL 6945862, at *3 (E.D.N.Y. Dec. 30, 2011), *aff'd*, 495 F. App'x 112 (2d Cir. 2012) (summary order)) (breach of contract); *Giardini v. Settanni*, 70 N.Y.S.3d 57, 58 (N.Y. App. Div. 2018) (conversion). Finally, unlike in the remaining authority that Porrini cites, the defendants' counterclaims here do not implicate the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b); *Levy*, 148 F.R.D. at 121. Thus, I will not dismiss the counterclaims as time barred.

**II.      Because it is plausible that the conversion counterclaim is not duplicative of the breach of contract counterclaim and that it involves specific, identifiable money, I decline to dismiss it at this stage in the litigation.**

Porrini argues that I should partially dismiss or strike the defendants' counterclaim for conversion to the extent that the defendants allege that Porrini submitted duplicate tickets for the work that she completed and improperly retained payments from the defendants' customers. *See* Pl.'s Br. 6–7; Pl.'s Reply Mem. of Law 5–6, 8, ECF No. 35 ("Defendants' conversion claim should be dismissed only insofar as it is predicated on Plaintiff's alleged submission of duplicate tickets and receipt of unreported payments from Crest customers."). First, Porrini argues that the conversion counterclaim is duplicative of the breach of contract claim. "Under New York law, a claim of conversion cannot be predicated on a mere breach of contract." *Fraser v. Doubleday & Co., Inc.*, 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984). That is, if a claimant merely seeks damages for a breach of contract, that claimant cannot also raise a conversion claim. *See id.* (quoting *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 452 N.Y.S.2d 599, 600 (N.Y. App. Div. 1982)). Accordingly, "to sustain a conversion claim, a [claimant] must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." *Id.* Still, a court may award punitive damages "for conversions but not for contract breaches[.]" *Id.* Thus, if a party acted "with malice or reckless disregard of [the claimant's] rights," the claimant may sustain an action for conversion, in addition to one for breach of contract, and seek punitive damages. *Id.*; *see also Morales v. Kavulich & Assocs, P.C.*, 294 F. Supp. 3d 193, 198 (S.D.N.Y. 2018) (quoting *Caballero v. Anselmo*, 759 F. Supp. 144, 153 (S.D.N.Y. 1991)) ("Punitive damages are available for conversion 'where circumstances show that the conversion was accomplished with malice, insult, reckless and willful disregard for [claimant's] rights, or by other proof evidencing the aggravated nature of the act.'"); *Good Sports of N.Y., Inc. v. Llorente*, 720 N.Y.S.2d 119, 119–20 (N.Y. App. Div. 2001) (upholding award of punitive damages for conversion).

Here, taking the facts alleged on the face of the counterclaims as true and in the light most

favorable to the defendants, I find it plausible that the conversion counterclaim alleges wrongful acts that are more than mere violations of contractual rights. The defendants allege that the contract between them and Porrini provided: (1) that Porrini would work as a seamstress for the defendants, Countercls. ¶ 215; (2) that the parties would adhere to a particular tagging and ticketing procedure for tracking Porrini's work and so that the defendants could pay her, *id.* ¶¶ 202, 216; (3) that the defendants would retain forty percent and Porrini would retain sixty percent of the proceeds per ticket, *id.* ¶¶ 203, 217; and (4) that the defendants would pay for supplies, with Porrini advising them of what she needed, *id.* ¶¶ 204, 218. As part of their conversion counterclaim, the defendants allege that Porrini submitted duplicate tickets and demanded payment for work for which the defendants had already paid her. *Id.* ¶ 219. I find it plausible that by engaging in this conduct, Porrini could have committed a wrong that was separate from a mere violation of contractual rights. For example, Porrini could have complied with all of the terms of the agreement as described in the counterclaims—completing her regular seamstress work, following the ticketing procedure, and retaining sixty percent of the proceeds per ticket—and nonetheless submitted extra tickets as a means of stealing money from the defendants. Discovery should reveal the particular terms of the agreement between the parties, and perhaps Porrini's actions did amount to a mere contractual violation, but I cannot so conclude at the motion to dismiss stage.

It is also plausible that by entering the store when it was closed and conducting business for her own gain—accepting and retaining cash payments from customers—Porrini committed a wrong that went over and above a mere breach of contract. *See id.* ¶¶ 222–23. This conduct likely would have violated the contract as described in the counterclaims, as Porrini did not prepare tags and tickets for this work, and she retained one-hundred percent, rather than sixty percent, of the proceeds. However, it is plausible that this conduct also involved additional wrongful or unlawful

acts—acts that surpassed merely declining to follow proper ticketing and profit-splitting procedure. Again, by revealing the specific terms of the alleged contract, discovery should shed more light on whether something more than a mere breach of contract occurred. But at this stage of the litigation, I cannot conclude that the conversion claim is duplicative.[2]

The plaintiff also argues that I should partially dismiss or strike the defendants' conversion counterclaim because the allegedly converted money is not a "specific identifiable thing[,]" as is required to sustain a claim for conversion. Pl.'s Br. 7. To show conversion, a claimant "must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the [opposing party] exercised an unauthorized dominion over the thing in question . . . to the exclusion of the [claimant's] rights[.]" *Jacob v. Kimberly-Clark Corp.*, No. 05-CV-1739 (ILG), 2006 WL 1582149, at *6 (E.D.N.Y. June 5, 2006) (quoting *Fiorenti v. Cent. Emergency Physicians, PLLC*, 762 N.Y.S.2d 402, 403 (N.Y. App. Div. 2003)). "Tangible personal property or specific money must be involved." *Id.* (quoting *Fiorenti*, 762 N.Y.S.2d at 403–04). On a motion to dismiss, "the question is whether the money alleged to have been converted is specifically 'identifiable' or, put another way, whether it is *capable* of 'being described or identified in the same manner as a specific chattel.'" *Grgurev v. Licul*, 229 F. Supp. 3d 267, 287 (S.D.N.Y. 2017) (quoting *9310 Third Ave. Assocs., Inc. v. Schaffer Food Serv. Co.*, 620 N.Y.S.2d 255, 256 (N.Y. App. Div. 1994)). "The purpose of this limitation is to ensure that the tort of conversion—a property tort—is applied only where a [claimant] alleges interference with money in which he has a property interest, as contrasted with a mere right to receive payment." *Id.* Whether the claimant

---

[2] It is also plausible that Porrini acted "with malice or reckless disregard of [the defendants'] rights," which would justify punitive damages on a conversion claim, in addition to any damages awarded for breach of contract. *Fraser*, 587 F. Supp. at 1288. However, the defendants have not specifically demanded punitive damages in their counterclaims.

alleges interference with money in which he has a property interest, as opposed to a mere right to payment, "often turns on whether the money alleged to have been converted was contained in a segregated fund of some sort." *Id.* "An action of conversion does not lie to enforce a mere obligation to pay money." *Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (quoting *Res. Funding Corp. v. Congrecare, Inc.*, No. 91 CIV. 8163 (RWS), 1994 WL 24825, at *9 (S.D.N.Y. Jan. 21, 1994)).

In this case, I cannot conclude at the motion to dismiss stage that the money that Porrini allegedly converted was not specifically identifiable. The defendants allege that Porrini submitted duplicate tickets for work for which the defendants had already paid her and demanded duplicate "payment[.]" Countercls. ¶ 219. Discovery will be necessary to determine whether Porrini deposited these allegedly duplicate payments into a segregated fund or whether the defendants can otherwise identify them "in the same manner as a specific chattel." *Grgurev*, 229 F. Supp. 3d at 287.[3] The defendants argue that they paid Porrini for duplicate tickets "by check." Defs.' Mem. of Law in Opp. to Pl.'s Mot. 12, ECF No. 34 ("Defs.' Br."). While this allegation appears only in the defendants' brief and not in their pleading itself, it is plausible based on the pleading alone that the duplicate "payment[s]" that Porrini allegedly demanded were checks or otherwise identifiable monies. Countercls. ¶ 219.[4] The defendants also allege that Porrini accepted and retained cash

---

[3] Discovery might also reveal whether the defendants had an "immediate superior right of possession" to the allegedly converted money—perhaps under the terms of their alleged contract with Porrini. *Jacob*, 2006 WL 1582149, at *6. Whether this element of conversion is satisfied is not clear from the face of the counterclaims.

[4] The defendants further argue that Porrini's record book, which they submitted as Exhibit 2 to their brief, shows that the duplicate payments are specifically identifiable as checks. *See* Defs.' Br. 12–13; Defs.' Br. Ex. 2, ECF No. 34-3. However, because the defendants did not attach this exhibit to their pleading or incorporate it into their pleading by reference, I will not consider it on a motion to dismiss. *See Dean v. N.Y.C. Transit Auth.*, 297 F. Supp. 2d 549, 554 (E.D.N.Y. Jan. 26, 2004). Relatedly, because I find the defendants' pleading adequate on its face, I will not address the several other exhibits that the defendants attached to their brief, except to note that I largely cannot

payments from customers while the store was closed. *Id.* ¶¶ 222–23. Again, discovery is necessary to reveal whether Porrini deposited these cash payments into a segregated fund or whether the cash is otherwise identifiable, and whether the defendants had an "immediate superior right of possession" to the cash. *Jacob*, 2006 WL 1582149, at *6. I cannot determine on a motion to dismiss that these alleged payments are not the proper subject of a conversion action. Thus, I decline to dismiss or strike the conversion counterclaim.

### III.   I will not dismiss or strike the defendants' demands for costs, fees, and disbursements because to do so would be premature.

For each counterclaim, the defendants seek "a monetary sum to be determined at trial together with interest, costs, fees, and disbursements." Countercls. ¶¶ 213, 227, 235. Porrini interprets the request for "costs, fees, and disbursements" as one for attorneys' fees. *See* Pl.'s Br. 8. Under New York law, "attorneys' fees are considered an incident of litigation and are not recoverable unless authorized by statute, court rule, or written agreement of the parties." *Reif v. Nagy*, 106 N.Y.S.3d 5, 23 (N.Y. App. Div. 2019). As an exception to this general rule, a party may recover attorneys' fees when the opposing party "acted with disinterested malevolence[.]" *Id.* (quoting *Brook Shopping Ctrs., Inc. v. Bass*, 483 N.Y.S.2d 1021, 1022 (N.Y. App. Div. 1985)). A party acts with disinterested malevolence when she "intentionally [seeks] to inflict economic injury on [the opposing parties] by forcing [them] to engage legal counsel." *Brook Shopping Ctrs.*, 483 N.Y.S.2d at 1022 (citing *United Pickle Co., Inc. v. Omanoff*, 405 N.Y.S.2d 727, 728 (N.Y. App. Div. 1978)).

While it seems unlikely that Porrini acted with disinterested malevolence with respect to the counterclaims—the defendants themselves chose to bring the counterclaims, so Porrini could

---

make sense of them without any context or explanation and therefore do not consider any of them.

not have forced them to engage legal counsel in order to do so—it would be premature to dismiss or strike a demand for attorneys' fees at this stage. *See SRSNE Site Grp. v. Advance Coatings Co.*, No. 3:12–CV–443 VLB, 2014 WL 671317, at *2 (D. Conn. Feb. 21, 2014) (quoting *Elliott v. Gouverneur Tribune Press, Inc.*, No. 7:13–cv–00055 (MAD/TWD), 2013 WL 6240489, at *4 (N.D.N.Y. Dec. 3, 2013)) (acknowledging that courts in this circuit have declined to dismiss or strike demands for attorneys' fees, even when likelihood of recovery was small, because dismissal at pleading stage was premature). Thus, I decline to do so.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion to dismiss or strike is denied in its entirety. Because the motion is denied, oral argument is unnecessary, and the defendants' request for oral argument is denied. *See* Request for Oral Arg., ECF No. 32.

SO ORDERED.


_____/s/_____
Allyne R. Ross
United States District Judge


Dated:          April 6, 2020
                Brooklyn, New York

14